**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **BRANDON D. WOODS, #2275139** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:22cv106** |
| | § | |
| **DIRECTOR, TDCJ-CID** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

*Pro se* Petitioner Brandon D. Woods, an inmate confined in the Texas prison system, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United States Magistrate Judge Kimberly C. Priest Johnson for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

## I. PROCEDURAL BACKGROUND

Petitioner is challenging his Collin County, Texas conviction, Cause No. 366-81312-2018. On April 1, 2019, Petitioner pled guilty to, and was convicted of, aggravated assault of a family or household member with a deadly weapon, enhanced by one prior conviction, pursuant to a plea agreement "open to judge for punishment." (Dkt. #14-5; Dkt. #14-33, p. 21). On June 24, 2019, the trial court sentenced Petitioner to seventy-five years' confinement. (Dkt. #14-33, pp. 29-30). Petitioner waived his right to appeal his guilty plea but retained the right to appeal his sentence. (Dkt. #14-5, p. 6; Dkt. #14-33, p. 25).

Petitioner filed a notice of appeal, but on motion signed by Petitioner and his counsel, the appeal was dismissed on January 31, 2020. *Woods v. State*, No. 05-19-00832-CR, 2020 WL 502893 (Tex. App. Jan. 31, 2020) (memorandum opinion) (Dkt. #14-33, pp. 31-32). On June 17,

1

2020, the Texas Court of Criminal Appeals ("TCCA") refused Petitioner's petition for discretionary review ("PDR"). *Woods v. State*, PD-0214-20 (Tex. Crim. App. 2020). Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court. (Dkt. #5, p. 3).

On November 7, 2020, Petitioner filed an application for state habeas corpus relief. (Dkt. #14-33, pp. 38-60). The state habeas trial court entered Findings of Fact and Conclusions of Law and recommended Petitioner's application be denied. (Dkt. #14-35, pp. 43-52). On June 9, 2021, the TCCA denied the application without written order on the findings of the state habeas trial court without a hearing and on the TCCA's independent review of the record. (Dkt. #14-30).

Petitioner filed the instant petition (Dkt. #5) on December 6, 2021.[1] Petitioner asserts the following claims for relief:

(1)     Trial counsel provided ineffective assistance by misinforming Petitioner about the terms of his guilty plea.

(2)     Trial counsel provided ineffective assistance by advising Petitioner to plead guilty before conducting a proper investigation.

(3)     Trial counsel provided ineffective assistance by failing to object to the trial court's use of the term "plea bargain" rather than "open plea."

(4)     Trial counsel provided ineffective assistance by advising Petitioner to waive his right to a direct appeal.

(Dkt. #5, pp. 6-7). The Director filed a response, arguing Claim 2 is waived by Petitioner's guilty plea and the remaining claims are without merit. (Dkt. #13). Petitioner did not file a reply.

---

[1] A *pro se* prisoner's habeas corpus petition is deemed filed, for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996, when the prisoner delivers the papers to prison authorities for mailing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Petitioner declared under penalty of perjury that he deposited the petition in the prison mailing system on December 6, 2021. (Dkt. #5, p. 10).

## II.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d

441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Thus, a state application that is denied without written order by the TCCA is an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472. Where the decision is a summary denial or affirmance, however, a "federal [habeas] court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning."[2] *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

In addition to the standard of review imposed by the AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original).

---

[2] The Director may rebut this presumption by showing that the most recent state court's unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were argued or supported by the record that the state court reviewed. *See Wilson*, 584 U.S. at 125-26; *Wesson v. Dir., TDCJ-CID*, No. 1:19-CV-00187-H, 2022 WL 3928513, at *3 (N.D. Tex. Aug. 30, 2022), *appeal dismissed sub nom. Wesson v. Lumpkin*, No. 22-10990, 2023 WL 2881423 (5th Cir. Mar. 10, 2023).

Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## III.  ANALYSIS

### A.  <u>Knowing and Voluntary Guilty Plea</u>

Petitioner pled guilty to aggravated assault of a family or household member with a deadly weapon. A voluntary guilty plea waives all non-jurisdictional defects including claims of ineffective assistance of counsel, except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); *Barrientos v. United States*, 668 F.2d 838, 842 (5th Cir. 1982); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (a knowing and voluntary guilty plea waives all non-jurisdictional deprivations that occurred prior to the plea). Thus, before addressing Petitioner's ineffective assistance claims on the merits, it is necessary to determine whether Petitioner's guilty plea was voluntary, knowing, and intelligent.

A guilty plea will be upheld on habeas review if the plea was entered into knowingly, voluntarily, and intelligently. *See Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). Whether a plea is knowing turns on whether the defendant understood the consequences of his plea; the defendant must have a full

understanding of "what the plea connotes and of its consequence." *Hernandez*, 234 F.3d at 255. If a criminal defendant understood the charge against him and the potential punishment for the offense charged—and voluntarily pled guilty—then the plea will be upheld. *See James v. Cain*, 56 F.3d 662, 666-67 (5th Cir. 1995).

With respect to voluntariness, the question becomes whether the plea was induced by threats or improper promises. *Montoya*, 226 F.3d at 405; *see also United States v. Nunez*, 539 F. App'x 502, 503 (5th Cir. 2013) ("Whether a plea is knowing looks to whether the defendant understands the direct consequences of his plea, while voluntariness looks to, inter alia, whether the plea was induced by threats or improper promises."). The Supreme Court has explained:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among alternative courses of action open to a defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). The court must satisfy itself that the plea is knowing and voluntary. *DeVille v. Whitley*, 21 F.3d 654, 657 (5th Cir. 1994).

Moreover, firm declarations in open court, including a plea colloquy, carry a strong presumption of verity. *See United States v. Perez*, 690 F. App'x 191, 192 (5th Cir. 2017) (per curiam) ("A defendant's solemn declarations in open court carry a strong presumption of truth.") (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). As a result, the petitioner faces the heavy burden of proving that he is entitled to relief through overcoming the evidence of his own words. *DeVille*, 21 F.3d at 659; *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1979); *see also*

*United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986) (holding that there must be independent indicia of the likely merit of the petitioner's contentions; mere contradiction of the statements made at the guilty plea proceeding will not suffice); *cf. United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (holding that in order to be entitled to an evidentiary hearing on a claim that sworn statements made during the guilty plea proceeding were false, the petitioner must make "specific factual allegations supported by the affidavit of a reliable third person"). The petitioner must show such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment. *Diaz*, 733 F.2d at 373-74 (citing *Blackledge*, 431 U.S. at 75).

The record shows that Petitioner appeared in court with trial counsel and pled guilty to aggravated assault of a family or household member with a deadly weapon. (Dkt. #14-5). Petitioner signed plea documents, including the "Plea Agreement," "Court's Admonitions to Defendant," and "Defendant's Waiver of Rights and Judicial Confession," which informed him of the charge against him and the range of punishment—"life or any term not more than 99 years or less than 15 years in the Institutional Division of the Texas Department of Criminal Justice ["TDCJ"] and an optional fine not to exceed $10,000." (Dkt. #14-33, pp. 21-25). The "Plea Agreement" informed Petitioner that it was "open to judge for punishment." (Dkt. #14-33, p. 21). The "Trial Court's Certification of Defendant's Right of Appeal" specifically stated Petitioner's case was "not a plea-bargain case" and Petitioner had "the right to appeal on punishment." (Dkt. #14-33, p. 25). Petitioner signed this document, indicating he had received a copy and "been informed of [his] rights concerning any appeal of this criminal case." (Dkt. #14-33, p. 25). Petitioner also signed a document waiving his constitutional rights and agreeing to stipulate to the facts and to judicially confess his guilt. (Dkt. #14-33, p. 23). Petitioner affirmed that his counsel had explained the plea

documents and that he had read and understood them; that his counsel explained—and he understood—"the legal effects" of waiving his rights and the consequences of his plea; that he waived his rights and entered his plea "knowingly, freely and voluntarily"; and that he was "fully satisfied" with his counsel's representation. (Dkt. #14-33, p. 23).

Additionally, trial counsel signed "Defense Attorney's Approval," certifying: that Petitioner had the ability to consult with counsel "with a reasonable degree of rational understanding" and had "a rational as well as factual understanding of the proceedings against him[]"; that counsel read and "fully explained" to Petitioner each of the plea documents and was "satisfied" Petitioner understood each of them; that counsel explained to Petitioner "the legal effects of waiving his[] rights and the legal consequences of his[] plea"; that counsel witnessed Petitioner's signature contained in the plea documents and was "satisfied" that Petitioner understood the "rights and the legal consequences of his[] plea"; that counsel was "satisfied" Petitioner's "plea, agreements, waivers, statements and stipulations [were] knowingly, freely and voluntarily made"; and that counsel approved and consented to each of the plea documents. (Dkt. #14-33, p. 24).

Furthermore, the transcript of the plea hearing reflects that the trial court admonished Petitioner as required by law. (*See generally* Dkt. #14-5). At the plea hearing, Petitioner confirmed: that he understood the aggravated assault charge in the indictment and the range of punishment if convicted; that he wished to waive certain constitutional rights in exchange for entering a guilty plea, including the right to a jury trial; that the trial court would determine punishment within the statutory sentencing range ("life or any term not more than 99 years or less than 15 years" in the TDCJ); that he understood that by pleading guilty under the plea agreement he would give up the right to appeal as to guilt/innocence but would retain the right to appeal punishment; that he was

pleading guilty freely and voluntarily; and that nobody forced or coerced him to plead guilty when he "really didn't want to." (Dkt. #14-5, pp. 4-11). The trial court accepted Petitioner's guilty plea, finding that his plea was freely and voluntarily entered. (Dkt. #14-5, p. 11). The trial judge signed the "Court's Approval," finding as follows:

1. The defendant has a sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding, and has a rational as well as factual understanding of the proceedings against him or her.

2. The defendant has the age, maturity, and intelligence to understand and does knowingly understand his or her rights with regard to the plea agreement, the admonishments, and waiver of rights and judicial confession.

3. The defendant does knowingly waive his or her rights as described therein.

4. The defendant does understand his or her rights regarding stipulations and does knowingly waive his or her rights to have such facts proved otherwise.

5. The defendant does knowingly stipulate and agree that the facts contained in the "Defendant's Waiver of Rights and Judicial Confession" are true and correct.

6. The defendant does knowingly request that neither a pre- or post-sentence investigation be made.

(Dkt. #14-33, p. 24).

These official court records "are entitled to a presumption of regularity and are accorded great evidentiary weight" on habeas corpus review. *Hobbs v. Blackburn*, 752 F.2d 1079, 1081-82 (5th Cir. 1985) (citations omitted). By signing each of the documents and pleading guilty in open court, Petitioner made declarations entitled to significant weight. The record shows Petitioner understood the nature of the charge against him and the potential punishment for the offense charged, as well as the consequences of pleading guilty. Additionally, the record demonstrates Petitioner understood that the plea agreement did not contemplate a bargained-for sentence of a specific period of confinement but instead was "open to judge for punishment"—in other words,

the trial court would determine his sentence in a later proceeding. The record also demonstrates Petitioner understood he waived the right to appeal as to guilt/innocence but retained the right to appeal punishment.

Trial counsel's affidavit (Dkt. #14-35, pp. 4-10), which was submitted in response to Petitioner's habeas application and found credible by the state habeas court (Dkt. #14-35, p. 43, ¶ 2), confirms that trial counsel correctly advised Petitioner regarding the terms of the plea agreement and that Petitioner knew and understood the terms of his guilty plea:

> On April 1, 2019, the day the case was scheduled to go to a jury trial, Mr. Woods decided that he wanted to do an open plea, and I was able to get Ms. Lasseter [the prosecutor] to agree. I once again explained all the advantages and disadvantages to handling his case in this manner. I explained to him that the terms of the open plea agreement were that the State of Texas would give up its' right to a trial on the matter as to guilt/innocence thus allowing for the possibility of a deferred probation from the Court. In exchange for the State's agreement the Defendant would plead guilty to the offense, give up his right to appeal as to guilt/innocence and go open to the Court for punishment. The Defendant would have a PSI report done. The State and the Defense would be able to present any witnesses either party wished at the sentencing phase. It was agreed that sentencing would be assessed after a presentence report was compiled. Prior to this agreement I explained the ramifications to Mr. Woods. I informed him that he would be giving up his rights to appeal on guilt/innocence, however, he could appeal any legal issues presented during the punishment phase of the trial. I also told him that there would likely be little to appeal on punishment since the law gives the Court great discretion in assessing punishment. He informed me that he understood my concerns and the rights he was giving up, but he was afraid that a jury would send him away for a long time. He stated at least he had a chance of probation from the judge. I informed him that I did not believe that an open plea was the way to go and that I believed the judge would send him away for an even longer sentence. Despite my warnings and concerns, Mr. Woods decided to enter the first half of his plea and go open to the Court for punishment. Mr. Woods fully understood that he was not signing for a 40, or even a 30, year sentence.
>
> . . . .
>
> Mr. Woods did sign plea agreement paperwork regarding his open plea, and I went over each, and every, page prior to his signing the documents. . . . The plea paperwork states that Mr. Woods is pleading guilty to "AGG ASSAULT DATE/FAMILY/HOUSE W/WEAPON." The plea agreement paperwork clearly sets of that it is "Open to Judge for Punishment." Furthermore, the documents do

> not contain language, nor have a box filled in or checked, indicating that Mr. Woods is pleading to any bargained for sentence. The plea documents clearly set out that Mr. Woods was pleading guilty to the offense and true to the enhancement paragraph. Additionally, the transcript of the proceedings clearly sets out that Mr. Woods was agreeing to plead guilty to the underlying offense and true to the enhancing paragraph. Furthermore, the transcript sets out that he was giving up his right to appeal the guilt/innocence portion of the trial. He was retaining the ability to appeal any issues related to the punishment phase of the case. Mr. Woods knew before and during the open plea that he was not receiving forty years confinement in exchange for his plea but was going open to the trial court for punishment.

(Dkt. #14-35, p. 6). Thus, Petitioner's assertion that trial counsel misinformed him about the terms of the plea agreement and that he was thus unaware he was entering an open plea for punishment by the trial court as opposed to a bargained-for sentence (Claim 1) is contradicted by the record. Petitioner fails to demonstrate that trial counsel's advice resulted in an unknowing or involuntary plea.

Petitioner presents no evidence that his guilty plea was not entered knowingly or voluntarily, other than his own mere contradiction of his statements; this contradiction will not carry his burden. *See Davis v. Butler*, 825 F.2d 892, 894 (5th Cir. 1987) (if a petitioner challenges his guilty plea, there must be independent indicia of the likely merit of his contentions, and mere contradiction of his statements at the guilty plea hearing will not carry his burden). Petitioner has failed to overcome the evidence of his own words. Thus, the record demonstrates Petitioner knowingly and voluntarily pled guilty.

**B.  Ineffective Assistance of Counsel (Claims 1-4)**

Petitioner claims he did not receive effective assistance of counsel because trial counsel misinformed him about the terms of his guilty plea, advised him to plead guilty before conducting a proper investigation, failed to object to the trial court's use of the term "plea bargain" rather than "open plea," and advised him to waive his right to a direct appeal.

12

A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James*, 56 F.3d at 667. To prevail on an ineffective assistance of counsel claim in the context of a guilty plea, a petitioner must demonstrate that his plea was rendered involuntary by showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985); *Armstead v. Scott*, 37 F.3d 202, 206 (1994); *Smith*, 711 F.2d at 682; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 688. Mere allegations from a petitioner that he would have demanded a trial if counsel's advice had been different are insufficient to establish a reasonable probability that he would have actually done so. *Joseph v. Butler*, 838 F.2d 786, 791 (5th Cir. 1988); *Wolfe v. Puckett*, 780 F. Supp. 408, 416 (N.D. Miss. 1991).

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). It must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Furthermore, a petitioner's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Even when

liberally construing *pro se* pleadings, "mere conclusory allegations on a critical issue . . . are insufficient to raise a constitutional issue." *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018) (citation omitted). More specifically, conclusory statements are insufficient to sustain a claim of ineffectiveness. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001).

Petitioner's ineffective assistance claims were fully developed during the state habeas corpus proceedings. Petitioner's trial counsel submitted an affidavit (Dkt. #14-35, pp. 4-10) addressing each alleged instance of ineffective assistance of counsel. The state habeas trial court found trial counsel and his affidavit credible, and applying the *Strickland* standards, concluded trial counsel did not render ineffective assistance. (Dkt. #14-35, pp. 43-52).

### 1. Misinforming Petitioner Regarding Terms of Plea Agreement (Claim 1)

Petitioner first contends trial counsel provided ineffective assistance by misinforming Petitioner about the terms of his guilty plea. (Dkt. #5, p. 6). Specifically, Petitioner argues he misunderstood the terms of the guilty plea and was unaware he was entering an open plea for punishment by the trial court. (Dkt. #5, p. 6).

In his affidavit submitted in response to Petitioner's state habeas application, trial counsel responded to Petitioner's claim as follows:

> The State of Texas did offer Mr. Woods a forty-year sentence in this matter which Mr. Woods declined. As a matter of fact, three days before the open plea was to start, I was able to convince the assistant district attorney to offer Mr. Woods a thirty-year sentence. I immediately went to the jail and implored Mr. Woods to take this offer. Additionally, at that time, we discussed the negative information which the State intended to bring up at the open plea which Mr. Woods had brought on himself since being in the Collin County jail charged with this offense. However, Mr. Woods still insisted on going forward with the open plea the next day.
>
> . . . .
>
> Mr. Woods charge was a First-degree aggravated assault with a deadly weapon and contained a paragraph making his range of punishment a minimum of 15 years TDC and a maximum of 99 years or life with an optional fine not to exceed $10,000.00.

Based upon Mr. Woods history, the main disadvantage in having a jury trial was that Mr. Woods was not eligible for probation from a jury. The advantage of an open plea was that Mr. Woods would be able to get a deferred probation from a judge. However, I explained that getting a deferred from a judge was problematic because the State was entitled to a jury trial and we could only go open to the Court for punishment and a possible probation if the district attorney waived its right to a jury trial. I also told Mr. Woods that getting a judge to go along with a deferred probation under Mr. Woods' circumstances was highly unlikely. I further informed Mr. Woods that by doing an open plea he would be giving up his right to appeal as to the guilt/innocence. I explained all of this to Mr. Woods and he began by having me contact the district attorney and make a five-year counteroffer, which I knew the State would not accept based upon my previous conversations. However, I drafted an email to Ms. Lasseter informing her of Mr. Woods offer and requesting she come back with a counteroffer, partially based upon the fact that the complainant, Ms. Isla Johnson, was not fully on board with the prosecution. The state refused Mr. Woods offer and stood by the forty-year TDC recommendation. I followed up with my client on January 29, 2019, at which time he came forward and told me he was in fact guilty of the offense. However, he said he did not mean to shoot Ms. Johnson and was guilty of a deadly conduct. I discussed the deadly conduct law with him and how it did not apply from his description, and that I did not believe a jury would go along with deadly conduct. However, I told Mr. Woods I would go back to the district attorney and see if this would change her mind.

At this meeting on January 29, 2019 Mr. Woods began to explain to me his trials and tribulations in life. At which time he also told me he had never received any drug treatment. He set out the things he had been doing and accomplishing in jail. He completed anger management, says he completed the Moral Reconnection course, and that the instructor would testify for him in court. He told me at this time that he would plea to a deadly conduct case and wanted to go open to the court. I told him I did not believe that the state would agree to the deadly conduct and may not even agree to allow him to go open. He informed me that he wanted to do an open plea and to see if the district attorney would agree.

After this meeting I talked with the complainant. She informed me that she told the district attorney she did not want the client to get a forty-year sentence. Ms. Johnson wanted Mr. Woods punished but she believed that forty years was too severe. Ms. Johnson was told by the assistant district attorney that it was "as good as the offer would get."

At this time, conversations went back and forth between the district attorney, me, and my client. I attempted to get the district attorney to offer between 15-20 years or to agree to an open plea, all pursuant to my client's instructions, but was unsuccessful. I met with Mr. Woods numerous times at the jail to go over discovery and discuss options. The district attorney stuck to her forty year offer and ultimately, on the day of trial, my client told me he wanted to do an open plea on the aggravated assault, and not go to a jury trial.

15

. . . .

On April 1, 2019, the day the case was scheduled to go to a jury trial, Mr. Woods decided that he wanted to do an open plea, and I was able to get Ms. Lasseter to agree. I once again explained all the advantages and disadvantages to handling his case in this manner. I explained to him that the terms of the open plea agreement were that the State of Texas would give up its' right to a trial on the matter as to guilt/innocence thus allowing for the possibility of a deferred probation from the Court. In exchange for the State's agreement the Defendant would plead guilty to the offense, give up his right to appeal as to guilt/innocence and go open to the Court for punishment. The Defendant would have a PSI report done. The State and the Defense would be able to present any witnesses either party wished at the sentencing phase. It was agreed that sentencing would be assessed after a presentence report was compiled. Prior to this agreement I explained the ramifications to Mr. Woods. I informed him that he would be giving up his rights to appeal on guilt/innocence, however, he could appeal any legal issues presented during the punishment phase of the trial. I also told him that there would likely be little to appeal on punishment since the law gives the Court great discretion in assessing punishment. He informed me that he understood my concerns and the rights he was giving up, but he was afraid that a jury would send him away for a long time. He stated at least he had a chance of probation from the judge. I informed him that I did not believe that an open plea was the way to go and that I believed the judge would send him away for an even longer sentence. Despite my warnings and concerns, Mr. Woods decided to enter the first half of his plea and go open to the Court for punishment. Mr. Woods fully understood that he was not signing for a 40, or even a 30, year sentence.

. . . .

Mr. Woods did sign plea agreement paperwork regarding his open plea, and I went over each, and every, page prior to his signing the documents. . . . The plea paperwork states that Mr. Woods is pleading guilty to "AGG ASSAULT DATE/FAMILY/HOUSE W/WEAPON." The plea agreement paperwork clearly sets of that it is "Open to Judge for Punishment." Furthermore, the documents do not contain language, nor have a box filled in or checked, indicating that Mr. Woods is pleading to any bargained for sentence. The plea documents clearly set out that Mr. Woods was pleading guilty to the offense and true to the enhancement paragraph. Additionally, the transcript of the proceedings clearly sets out that Mr. Woods was agreeing to plead guilty to the underlying offense and true to the enhancing paragraph. Furthermore, the transcript sets out that he was giving up his right to appeal the guilt/innocence portion of the trial. He was retaining the ability to appeal any issues related to the punishment phase of the case. Mr. Woods knew before and during the open plea that he was not receiving forty years confinement in exchange for his plea but was going open to the trial court for punishment.

(Dkt. #14-35, pp. 4-6).

The state habeas trial court made the following findings and conclusions of law:

4.   Applicant alleges that counsel was ineffective in his advice to enter an open plea of guilty. According to Applicant, he believed that he was accepting the State's offer of 40 years' confinement but instead he was entering an open plea. Applicant alleges he was harmed by this misinformation because the trial court assessed punishment at 75 years' confinement;

5.   The State did offer Applicant a forty-year sentence and Applicant declined the offer. Peale Aff., p. 1. Three days before the case was set, counsel was able to convince the prosecutor to offer a thirty-year sentence. *Id.* Counsel immediately went to the jail and "implored" Applicant to accept the offer. *Id.* Applicant declined the State's offer. *Id.*;

6.   The day that a jury trial was to start, Applicant decided that he wanted to enter an open plea and counsel was able to get the prosecutor to agree. Peale Aff., p. 3;

7.   Counsel explained the advantages and disadvantages of an open plea. *Id.*;

8.   Counsel explained to Applicant that under the terms of the open plea agreement, the State was giving up its right to a jury trial, thus allowing for the possibility of probation. *Id.* In exchange, Applicant would plead guilty, give up his right to appeal matters at to guilt/innocence, and go open to the trial court on punishment. *Id.*;

9.   Applicant told counsel that he understood counsel's concerns about giving up a jury trial, but he was afraid that a jury would give him a long sentence. *Id.* Counsel warned Applicant that he did not believe that an open plea was the way to go and that he believed that the judge would give him an even longer sentence. *Id.*;

10.   Despite counsel's warnings and concerns, Applicant fully understood that he was entering an open plea, not accepting an offer for forty-year or thirty-year sentence. *Id.*;

11.   Counsel went over the plea paperwork with Applicant before he signed it. *Id.* The plea paperwork clearly shows that it is an open plea and there is no language indicating that there was a bargained-for sentence. *Id.*; Peale Ex. B;

12.   Applicant was aware that he was entering a plea of guilty and going open for punishment before the trial court;

13.     Applicant has failed to prove by a preponderance of the evidence that counsel was deficient or that he would not have pleaded guilty but for the alleged deficiency[.]

(Dkt. #14-35, pp. 43-45). The TCCA adopted the state habeas trial court's findings when it denied Petitioner's writ of habeas corpus.

Petitioner fails to rebut the presumptive correctness of the state court's findings with clear and convincing evidence, nor does an independent review of the state court record reveal clear and convincing evidence that would rebut the presumption of correctness. In rejecting Petitioner's claim, the state court carefully and thoroughly discussed the facts and reasonably applied *Strickland* to the facts before it. To start, as discussed in Section III(A), *supra*, the plea agreement signed by Petitioner demonstrated his awareness of the "relevant circumstances and likely consequences" of his plea, including that he was not pleading to a set sentence but that the trial court would determine his sentence. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). The plea agreement states that Petitioner understood the terms of the plea agreement, that counsel explained the legal effects of the agreement, that he was satisfied with counsel's advice, and that he was not coerced or misled into making the plea. Further, Petitioner testified in open court that he fully understood the terms of the plea agreement, which included that it was "open to judge for punishment." Additionally, as discussed in Section III(A), *supra*, the record is equally dispositive of Petitioner's claim that trial counsel misinformed him about the terms of the plea agreement related to sentencing. Trial counsel repeatedly advised Petitioner it was an open plea as to punishment in which the trial court would determine his sentence and he was not entering into a plea agreement with a bargained-for sentence, such as a set sentence for thirty or forty years. Moreover, Petitioner completely failed to prove that, but for trial counsel's actions, he would have chosen to proceed to trial. Petitioner has therefore failed to establish a valid ineffective assistance

18

of counsel claim. *Hill*, 474 U.S. at 58. Accordingly, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court's adjudication of Petitioner's ineffective assistance of counsel claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Moore*, 313 F.3d at 882. Consequently, Petitioner has not shown that he is entitled to federal habeas corpus relief with respect to Claim 1 and it should be denied.

### 2. Failure to Investigate (Claim 2)

Petitioner next asserts trial counsel provided ineffective assistance by advising him to plead guilty before conducting a proper investigation. (Dkt. #5, p. 6). Specifically, Petitioner argues that by failing to investigate, trial counsel "passed over critical impeachment evidence of the State's only fact witness which could have provided Petitioner with substantial leverage during the plea process or culminated in a 'not guilty verdict' had he elected to go to trial." (Dkt. #5, p. 6).

By voluntarily pleading guilty to an offense, a criminal defendant foregoes claims for relief based on all non-jurisdictional defects preceding the plea. *McMann v. Richardson*, 397 U.S. 759, 767 (1970); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). This includes claims for ineffective assistance of counsel, except those alleging that the ineffectiveness rendered the guilty plea involuntary. *Smith*, 711 F.2d at 682. Petitioner has not shown that his plea was unknowing or involuntary. Thus, Petitioner's ground for relief concerning trial counsel's alleged ineffective assistance for failing to investigate is waived by his knowing and voluntary guilty plea and is insufficient to warrant habeas relief.

### 3. Failure to Object (Claim 3)

Petitioner further argues trial counsel provided ineffective assistance by failing to object to the trial court's use of the term "plea bargain" rather than "open plea." (Dkt. #5, p. 7). Petitioner asserts trial counsel's failure to object "created a framework upon which Petitioner's confusion about the proceeding was predicated and prompted Petitioner to enter the guilty plea." (Dkt. #5, p. 7).

In his affidavit submitted in response to Petitioner's state habeas application, trial counsel responded to Petitioner's claim as follows:

> In review of the transcript, the trial court did refer to this matter as a plea bargain during the initial pleading proceedings. I do not recall if the Court referred to this as a plea bargain case during the presentation of the evidence during the open plea proceedings that took place on June 24, 2019. Counsel did not object at the initial proceeding to the court's characterization because it was a plea bargain to some degree. The plea bargain, as set out earlier, was that the State of Texas was waiving its' right to a trial in exchange for the Defendant pleading guilty and waiving appeal at the guilt/innocence stage. The benefit to the Defendant was that in this scenario it would be possible that the Judge could give the Defendant a deferred probation if the Judge were so inclined. However, there was no agreement to plead to a set amount of penitentiary time.
>
> . . . .
>
> I do believe that the trial court did underst[and] that Mr. Woods was entering an open plea during the open plea or sentencing phase of the proceedings. I have not reviewed the transcript for the actual hearing that took place on June 24, 2019, however the documents filled out at the initial hearing on April 1, 2019 clearly reflect it as an open to the judge for punishment. The transcripts of the initial proceeding reflect conversations between the trial court and counsel about the open plea. The conversations also discuss a presentence report and time to get such a report completed for the final hearing. Ultimately a hearing was held on June 24, 2019. Evidence was presented by both sides at that hearing and final arguments were made by counsel. I know that during final arguments I requested that the Court grant my client a deferred probation. I am confidant from all the conversations with the court both on and off the record, the proceedings before the court and final argument, that the trial court was fully aware that Mr. Woods was entering an open plea in which the trial court would be the final arbitrator of the ultimate punishment for Mr. Woods.

(Dkt. #14-35, pp. 7-8).

    The state habeas trial court made the following findings and conclusions of law:

14.    Applicant argues that his trial counsel was ineffective because he did not object when the trial court referred to a "plea bargain agreement" during the plea hearing. According to Applicant, the lack of objection shows that counsel was unaware that that the plea was actually an open plea;

15.    In order to succeed with an ineffective-assistance-of-counsel claim based on counsel's failure to object, one "must show that the trial judge would have committed error in overruling such objection." *Ex parte Parra*, 420 S.W.3d 821, 824-25 (Tex. Crim. App. 2013);

16.    Counsel did not object to the statement because there was a plea bargain agreement to some degree because the State waived its right to a jury trial in exchange for Applicant pleading guilty and waiving his right to appeal certain matters. Peale Aff., p. 4-5;

17.    Counsel had no reason to believe that the trial court did not understand that Applicant was entering an open plea. Peale Aff., p. 5;

18.    Applicant has not shown by a preponderance of the evidence that counsel's reasons for not objecting to the statements was deficient;

19.    The trial court stated during the plea hearing that the next step was to determine his punishment and that the case would be reset to another date. Applicant's Ex. B, p. 11 (Reporter's Record of Plea Hearing);

20.    Applicant has failed to prove by a preponderance of the evidence that the trial court would [have] acted differently, had counsel objected and pointed out that this was an open plea[.]

(Dkt. #14-35, pp. 45-56). The TCCA adopted the state habeas trial court's findings when it denied Petitioner's writ of habeas corpus.

    Petitioner fails to rebut the presumptive correctness of the state court's findings with clear and convincing evidence, nor does an independent review of the state court record reveal clear and convincing evidence that would rebut the presumption of correctness. In rejecting Petitioner's claim, the state court carefully and thoroughly discussed the facts and reasonably applied *Strickland* to the facts before it. As noted by both trial counsel and the state habeas trial court,

Petitioner's case was a type of plea bargain whereby the State waived its right to a jury trial and the trial court—not a jury—would determine Petitioner's sentence, in exchange for Petitioner pleading guilty and waiving his right to appeal guilt/punishment. This plea agreement left open the possibility, however slim, that the trial court would place Petitioner on deferred probation instead of sentencing him to imprisonment. The record establishes that there was no confusion among the trial court, trial counsel, and Petitioner that Petitioner was entering an "open plea" as to punishment and was not pleading to a set sentence. Indeed, the "Plea Agreement" informed Petitioner that it was "open to judge for punishment." (Dkt. #14-33, p. 21). Additionally, Petitioner testified in open court that he fully understood the terms of the plea agreement, which included that it was "open to judge for punishment." The transcript of the plea hearing also demonstrates that the trial court, trial counsel, and Petitioner all understood Petitioner was entering an "open plea" as to punishment and was not pleading to a specific period of confinement. The record is devoid of any indication that the trial court, trial counsel, or Petitioner understood that Petitioner was pleading to a bargained-for-sentence. Under these circumstances, trial counsel did not render deficient performance by failing to object to the trial court's use of the term "plea bargain." Moreover, Petitioner fails to demonstrate that trial counsel's failure to object resulted in an involuntary plea or that he would not have pled guilty but for trial counsel's error and, instead, would have insisted upon going to trial. *See Hill*, 474 U.S. at 59; *Armstead*, 37 F.3d at 206. Petitioner has therefore failed to establish a valid ineffective assistance of counsel claim. *Hill*, 474 U.S. at 58. Accordingly, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court's adjudication of Petitioner's ineffective assistance of counsel claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or resulted in a decision based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Moore*, 313 F.3d at 882. Consequently, Petitioner has not shown that he is entitled to federal habeas corpus relief with respect to Claim 3 and it should be denied.

### 4. Advice Regarding Appeal Waiver (Claim 4)

Finally, Petitioner contends trial counsel provided ineffective assistance by advising Petitioner to waive his right to a direct appeal. (Dkt. #5, p. 7).

In his affidavit submitted in response to Petitioner's state habeas application, trial counsel responded to Petitioner's claim as follows:

> Applicant waived his right to appeal the guilt/innocence part of the trial, but he did not waive appeal as it applied to the punishment of the case. This fact is noted on the "Trial Court's Certification of Defendant's Right of Appeal" which is included in Exhibit B. This fact is also noted in the Court's transcript of the proceedings that took place on April 1, 2019.

> . . . .

> Yes, counsel did inform Applicant on numerous occasions and in numerous ways of his limited waiver of his right of appeal. I spoke with Mr. Woods numerous times about this waiver prior to ever coming to court and entering his plea. Additionally, I spoke with Mr. Woods about his waivers while going over and signing the plea documents. Furthermore, the Court went over his waivers on the record at his initial plea on April 1, 2019.

(Dkt. #14-35, p. 9).

The state habeas trial court made the following findings and conclusions of law:

> 21.    Applicant argues that counsel was ineffective for advising him to waive his right to an appeal as part of the plea agreement because, according to Applicant, he did not have to waive his right to appeal in order to enter an open plea;

> 22.    As part of the plea agreement in this case, the State agreed to waive its right to a jury trial if Applicant pleaded guilty and waived his right to appeal matters regarding the guilt/innocence phase. Peale Aff., p. 3;

23.     Applicant retained the right to appeal matters regarding the punishment phase. Peale Aff., p. 6; Peale Ex. B (Trial Court's Certification of Defendant's Right to Appeal);

24.     Counsel informed applicant of this waiver prior to the plea and while he reviewed the plea paperwork with Applicant. Peale Aff., p. 6;

25.     Applicant has failed to prove by a preponderance of the evidence that counsel was ineffective for his advice regarding the waiver of appeal;

26.     Applicant requested that counsel negotiate an open plea with the State and counsel advised that the waiver of appeal of certain matters was part of the plea agreement;

27.     Applicant has failed to prove by a preponderance of the evidence that he would not have pleaded guilty but for counsel's alleged deficiency[.]

(Dkt. #14-35, pp. 46-47). The TCCA adopted the state habeas trial court's findings when it denied Petitioner's writ of habeas corpus.

Petitioner fails to rebut the presumptive correctness of the state court's findings with clear and convincing evidence, nor does an independent review of the state court record reveal clear and convincing evidence that would rebut the presumption of correctness. In rejecting Petitioner's claim, the state court carefully and thoroughly discussed the facts and reasonably applied *Strickland* to the facts before it. Petitioner fails to overcome the strong presumption that trial counsel's advice to waive the right to appeal guilt/innocence fell within the wide range of reasonable professional assistance. As previously stated, in exchange for Petitioner pleading guilty and waiving his right to appeal guilt/innocence, the State waived its right to a jury trial and agreed to have the trial court—not a jury—determine Petitioner's sentence. This plea agreement left open the possibility, however slim, that the trial court would place Petitioner on deferred probation instead of sentencing him to imprisonment. As trial counsel avowed, Petitioner's main concern was that the "jury would send him away for a long time." (Dkt. #14-35, p. 6). Trial counsel successfully negotiated the plea agreement so that deferred probation remained a possibility.

Petitioner fails to establish trial counsel's performance was deficient. Petitioner also fails to demonstrate that trial counsel's advice regarding the appeal waiver resulted in an involuntary plea or that he would not have pled guilty but for trial counsel's alleged erroneous advice and, instead, would have insisted upon going to trial. *See Hill*, 474 U.S. at 59; *Armstead*, 37 F.3d at 206. Petitioner has therefore failed to establish a valid ineffective assistance of counsel claim. *Hill*, 474 U.S. at 58. Accordingly, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court's adjudication of Petitioner's ineffective assistance of counsel claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Moore*, 313 F.3d at 882. Consequently, Petitioner has not shown that he is entitled to federal habeas corpus relief with respect to Claim 4 and it should be denied.

## IV. CONCLUSION

Petitioner fails to show that he is entitled to federal habeas relief. Petitioner fails to show that his guilty plea was involuntary or unknowing; thus, his claim that trial counsel failed to investigate (Claim 2) is waived. Petitioner also fails to demonstrate that trial counsel rendered ineffective assistance under *Strickland*. Specifically, Petitioner fails to demonstrate that trial counsel's alleged deficiencies resulted in an unknowing or involuntary plea or that he would not have pled guilty but for trial counsel's alleged errors and, instead, would have insisted upon going to trial. Above all, Petitioner has failed to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings. *Williams*, 529 U.S. at 402-03, 405-06; *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed with prejudice.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the

petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the dismissal and denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended the Court find that Petitioner is not entitled to a certificate of appealability.

## VI. RECOMMENDATION

It is recommended the above-styled petition filed under 28 U.S.C. § 2254 be denied and the case be dismissed with prejudice. It is further recommended a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that

such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 1st day of August, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE